LYNN HUBBARD, III, SBN 69773
SCOTTLYNN J HUBBARD, IV, SBN 212970
**DISABLED ADVOCACY GROUP, APLC**
12 Williamsburg Lane
Chico, CA 95926
Telephone: (530) 895-3252
Facsimile: (530) 894-8244

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT DODSON,<br><br>Plaintiff,<br><br>vs.<br><br>WAL-MART STORES, INC. dba WALMART #1760; WAL MART REAL ESTATE RETAIL TRUST, IV,<br><br>Defendants. | No.<br><br>**Plaintiff's Complaint** |

## I. SUMMARY

1. This is a civil rights action by plaintiff Robert Dodson ("Dodson") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

Walmart #1760
1018 Riley Street
Folsom, CA 95630
(hereafter "the Store")

2. Dodson seeks damages, injunctive and declaratory relief, attorney fees and costs, against Wal-Mart Stores, Inc. dba Walmart #1760 and Wal Mart Real Estate Retail Trust, IV (collectively "Walmart") pursuant to the Americans with Disabilities Act of 1990, ( 42 U.S.C. §§ 12101 et seq.), and related California statutes.

## II. JURISDICTION

3. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4. Supplemental jurisdiction for claims brought under parallel California law—arising from the same nucleus of operative facts—is predicated on 28 U.S.C. § 1367.

5. Dodson's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III. VENUE

6. All actions complained of herein take place within the jurisdiction of the United States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

## IV. PARTIES

7. Walmart owns, operates, and/or leases the Store, and consists of a person (or persons), firm, and/or corporation.

8. Dodson is a quadriplegic as a result of a car accident and requires the use of an electric wheelchair when traveling about in public. Consequently, Dodson is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

## V. FACTS

9. The Store is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

10. Dodson visited the Store and encountered barriers (both physical and intangible) that interfered with—if not outright denied—his ability to use and enjoy the goods, services, privileges, and accommodations offered at the facility. To the extent known by Dodson, the barriers at the Store included, but are not limited to, the following:

- The tow away signage posted is incorrect;
- There is not tow away signage posted at each entrance;
- The cross slope of the disabled parking spaces exceeds 2.0%;
- The cross slope of the access aisles exceeds 2.0%
- The accessible route from the disabled parking is obstructed by shopping carts;
- There is no International Symbol of Accessibility posted at the entrance;
- There is no checkstand designated as being accessible to the disabled, nor open at all times for persons with disabilities;
- The checkout counters are too high, with no portion lowered to accommodate a patron in a wheelchair;
- The ATMs are mounted at too steep of an angle;
- The signage posted at the restrooms is incorrect;
- There is no handle mounted below the lock on the interior of the water closet stall door;

- The toilet tissue dispenser protrudes into the clear maneuvering space needed to access the water closet;
- The toilet tissue dispenser contains sharp edges on both ends;
- If one must use the forward-most roll of toilet tissue, it is more than twelve inches from the front of the water closet;
- The operable part of the disposable seat cover dispenser is more than 40 inches from the floor;
- The water closet is an obstruction to the use of the disposable seat cover dispenser;
- There is insufficient knee clearance below the lavatory;
- The soap dispensers are outside of the required reach range limits due to depth of the lavatory; and,
- There is insufficient clear floor space inside the dressing room.

These barriers prevented Dodson from enjoying full and equal access.

11. Dodson was also deterred from visiting the Store because he knew that the Store's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as himself). He continues to be deterred from visiting the Store because of the future threats of injury created by these barriers.

12. Dodson also encountered barriers at the Store, which violate state and federal law, but were unrelated to his disability. Nothing within this complaint, however, should be construed as an allegation that Dodson is seeking to remove barriers unrelated to his disability.

13. Walmart knew that these elements and areas of the Store were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, Walmart has the financial resources to remove these barriers from Walmart (without much difficulty or expense), and make the Store accessible to the physically disabled. To date, however, Walmart

refuses to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

14. At all relevant times, Walmart has possessed and enjoyed sufficient control and authority to modify the Store to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations. Walmart has not removed such impediments and has not modified the Store to conform to accessibility standards. Walmart has intentionally maintained the Store in its current condition and has intentionally refrained from altering the Store so that it complies with the accessibility standards.

15. Dodson further alleges that the (continued) presence of barriers at the store is so obvious as to establish Walmart's discriminatory intent.[1] On information and belief, Dodson avers that evidence of this discriminatory intent includes Walmart's refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Store; conscientious decision to the architectural layout (as it currently exists) at the Store; decision not to remove barriers from the Store; and allowance that Walmart's property continues to exist in its non-compliant state. Dodson further alleges, on information and belief, that Walmart is not in the midst of a remodel, and that the barriers present at the Store are not isolated (or temporary) interruptions in access due to maintenance or repairs.[2]

## VI. FIRST CLAIM

### **Americans with Disabilities Act of 1990**

### Denial of "Full and Equal" Enjoyment and Use

16. Dodson incorporates the allegations contained in paragraphs 1 through 15 for this claim.

---

[1] E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6

[2] Id.; 28 C.F.R. § 36.211(b)

17. Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

18. Walmart discriminated against Dodson by denying "full and equal enjoyment" and use of the goods, services, facilities, privileges or accommodations of the Store during each visit and each incident of deterrence.

Failure to Remove Architectural Barriers in an Existing Facility

19. The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." Id. § 12181(9).

20. When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

21. Here, Dodson alleges that Walmart can easily remove the architectural barriers at Store without much difficulty or expense, and that Walmart violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

22. In the alternative, if it was not "readily achievable" for Walmart to remove the Store's barriers, then Walmart violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

Failure to Design and Construct an Accessible Facility

23. On information and belief, the Store was designed or constructed (or both) after January 26, 1992—independently triggering access requirements under Title III of the ADA.

24. The ADA also prohibits designing and constructing facilities for first occupancy after January 26, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

25. Here, Walmart violated the ADA by designing or constructing (or both) the Store in a manner that was not readily accessible to the physically disabled public—including Dodson—when it was structurally practical to do so.[3]

Failure to Make an Altered Facility Accessible

26. On information and belief, the Store was modified after January 26, 1992, independently triggering access requirements under the ADA.

27. The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires adding making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

28. Here, Walmart altered the Store in a manner that violated the ADA and was not readily accessible to the physically disabled public—including Dodson—to the maximum extent feasible.

Failure to Modify Existing Policies and Procedures

29. The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities,

---

[3] Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

30. Here, Walmart violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Store, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

31. Dodson seeks all relief available under the ADA (*i.e.*, injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

32. Dodson also seeks a finding from this Court (*i.e.*, declaratory relief) that Walmart violated the ADA in order to pursue damages under California's Unruh Civil Rights Act or Disabled Persons Act.

## VII. SECOND CLAIM

## **Disabled Persons Act**

33. Dodson incorporates the allegations contained in paragraphs 1 through 30 for this claim.

34. California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

35. California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

36. Both sections specifically incorporate (by reference) an individual's rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

37. Here, Walmart discriminated against the physically disabled public—including Dodson—by denying them full and equal access to the Store. The Walmart also violated Dodson's rights under the ADA, and, therefore, infringed upon or violated (or both) Dodson's rights under the Disabled Persons Act.

38. For each offense of the Disabled Persons Act, Dodson seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

39. He also seeks to enjoin Walmart from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

## VIII. THIRD CLAIM

## **Unruh Civil Rights Act**

40. Dodson incorporates the allegations contained in paragraphs 1 through 30 for this claim.

41. California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

42. California Civil Code § 51.5 also states, in part, that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

43. California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

44. Walmart's aforementioned acts and omissions denied the physically disabled public—including Dodson—full and equal accommodations,

advantages, facilities, privileges and services in a business establishment (because of their physical disability).

45. These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Dodson by violating the Unruh Act.

46. Dodson was damaged by Walmart's wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

47. Dodson also seeks to enjoin Walmart from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

IX. FOURTH CLAIM

**Denial of Full and Equal Access to Public Facilities**

48. Dodson incorporates the allegations contained in paragraphs 1 through 13 for this claim.

49. Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

50. Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

51. Dodson alleges the Store is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Store was not exempt under Health and Safety Code § 19956.

52. Walmart's non-compliance with these requirements at the Store aggrieved (or potentially aggrieved) Dodson and other persons with physical disabilities. Accordingly, he seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## X. PRAYER FOR RELIEF

WHEREFORE, Dodson prays judgment against Walmart for:

1. Injunctive relief, preventive relief, or any other relief the Court deems proper.
2. Declaratory relief that Walmart violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages.
3. Statutory minimum damages under either sections 52(a) or 54.3(a) of the California Civil Code (but not both) according to proof.
4. Attorneys' fees, litigation expenses, and costs of suit.[4]
5. Interest at the legal rate from the date of the filing of this action.

DATED: March 30, 2009 DISABLED ADVOCACY GROUP, APLC

*/s/ Lynn Hubbard, III*
LYNN HUBBARD, III
Attorney for Plaintiff

[4] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.